IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES                                                                                    PLAINTIFF

V.                          CASE NO. 5:23-CR-50074-002

BRUCE LAMONT STRICKLAND                                                                      DEFENDANT

**OPINION AND ORDER**

Now before the Court are Defendant Bruce Lamont Strickland's Motion to Suppress (Doc. 24), the Government's Response (Doc. 26), and Defendant's Reply (Doc. 29). Defendant challenges the validity of the search warrant in his case for lack of probable cause and seeks to suppress "all physical evidence received in the search and all statements given by Defendant and his co-defendant as a result of the search." (Doc. 24, p. 3). The Court has reviewed the parties' briefing and accompanying exhibits.[1] For the reasons that follow, the Motion to Suppress is **DENIED**.

**I.    BACKGROUND**

In this case, Detective Joshua Cookinham of the Rogers Police Department submitted an affidavit to the Honorable Christine Horwart, Benton County Circuit Court Judge, seeking a warrant to search Mr. Strickland's residence. The affidavit stated, *inter alia*, that Detective Cookinham was contacted by a confidential informant ("CI"), with whom he had worked previously and who advised that Defendant was selling methamphetamine and possessed a firearm. The affidavit stated that the CI provided the

---

[1] The Court previously inquired via email whether Mr. Strickland requested a hearing on this Motion. Defense counsel stated, "The defense does not seek an evidentiary hearing or oral argument" and "agree[s] that a hearing is not required because the facts are undisputed and the question is a legal one." (Doc. 30-1, p. 1).

location and a description of the apartment Mr. Strickland was staying at and the car he was driving, and that the Benton County Drug Unit established surveillance at this location. Pursuant to the affidavit, Judge Horwart issued a search warrant. The officers subsequently searched Mr. Strickland's residence and arrested him. He was indicted on four counts related to the distribution of methamphetamine and possession of a firearm.

Mr. Strickland asserts that the search warrant here was not supported by probable cause because the supporting affidavit "gives absolutely no information as to how the [confidential] informant obtained the information relayed to the detective." (Doc. 24, p. 2).[2] In its Response, the Government contends: (a) that the warrant is of no consequence because Defendant had a warrantless search waiver on file, pursuant to Arkansas Code § 16-93-106, due to his state parolee status; (b) if the warrant was required, it met the requirements for probable cause under current law; and (c) even if the warrant was required and deficient, suppression is inappropriate because the good-faith exception applies. (Doc. 26, pp. 4, 6–7, 10) (citing, *inter alia*, *Illinois v. Gates*, 426 U.S. 213 (1983)).

## II.  DISCUSSION

### A.  Warrantless Search Waiver

In his Reply, Mr. Strickland argues that the warrantless search waiver did not permit the search at issue for two reasons: first, "[t]he officers weren't relying on the warrantless search waiver to conduct the search"; and second, the officers lacked the required probable cause to believe that the dwelling that was searched was Mr. Strickland's

---

[2] The Court notes that Mr. Strickland's initial argument in favor of suppression was premised on abrogated case law, as the Government pointed out in its Response. Mr. Strickland conceded this in his Reply, but maintained his Motion, reframing his arguments under the appropriate law.

residence.[3] (Doc. 29, p. 8). As to the first contention, Mr. Strickland cites no standard that requires an officer to *rely* on a warrantless search waiver in order for said search to be permitted under the waiver. And the Court is unpersuaded that such a waiver is rendered null simply by an officer seeking a warrant.

Mr. Strickland's second argument holds more water but still fails to render the search impermissible under the waiver. Mr. Strickland is correct that "[a]n officer must have probable cause to believe a dwelling is the residence of a parolee in order to initiate a warrantless search of a residence not known to be the home of a parolee." *United States v. Thabit*, 56 F.4th 1145, 1151 (8th Cir. 2023). And, according to the relevant affidavit, Mr. Strickland listed a different address with the parole office than was identified by the CI. However, where information from a CI is corroborated, it can serve as "[e]vidence that tends to prove [a defendant's] residence." *Id.* at 1152 (citations omitted); *see also United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993) ("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable. Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." (citations omitted)).

---

[3] The language of the waiver reads, in relevant part:

> As a condition of my supervised parole or probation, I agree to allow any Arkansas Community Correction officer, or any certified law enforcement officer, to conduct a warrantless search of my person, *place of residence*, or motor vehicle at any time, day or night, whenever requested by the Arkansas Community Correction officer, or certified law enforcement officer.

(Doc. 26-1, p. 1) (emphasis added).

In *Thabit*, officers conducted a warrantless search of a third party's residence pursuant to a warrantless search waiver. There, the defendant had listed his mother's address as his residence with the Department of Corrections, but a CI had told an investigator that the defendant "was staying at a residence with an unidentified female and was selling narcotics from the residence." *Id.* at 1148. The CI had previously worked with the investigator at least once before and had provided reliable information. *Id.* The investigator, however, could not recall if he received the tip in person or over a call or text. *Id.* When law enforcement arrived at the third party's residence, they "observed [the defendant] leaving the residence in his car." *Id.* They arrested him and searched the third party's residence. *Id.* The court held that although the defendant "was seen physically present nearby," "[p]roximity to a dwelling [ ] does not suffice to establish residence." *Id.* at 1152. The court reasoned that the CI's tip did not have sufficient "indicia of reliability to support probable cause without corroboration." *Id.* Despite the CI having given reliable information at least once in the past, "the record contain[ed] no details as to the basis of the tip" and the investigator could not remember how he received the tip. *Id.* Because the officers lacked probable cause to believe the third party's residence was also the residence of the defendant, the warrantless search was impermissible.

The court in *Thabit* distinguished its finding from *United States v. Gabrio*, 295 F.3d 880 (8th Cir. 2002). In *Gabrio*, the issue was whether there was sufficient probable cause to issue a warrant based on an officer's affidavit detailing the information given to him by a CI, who alleged they were at the defendant's residence and saw him with firearms. *Id.* at 882. The court there found that there was probable cause based on the CI's tip because the "informant [ ] had a track record of providing reliable information" based on

4

the fact that the officer's "affidavit stated that the informant had provided reliable information on at least two prior occasions and had returned stolen property to law enforcement officers." *Id.* at 883. The court held "this information was sufficient to show reliability." *Id.* The court continued that the CI's reliability was further bolstered by the information being "based on the informant's first-hand observations" and "given in person, so the officer could better assess credibility." *Id.* The court also noted that the affidavit's recitation of the defendant's felony record also made the tip more credible. *Id.*

The issue in the case at bar comes down to whether the CI's tip was sufficiently reliable to establish probable cause for the officers to believe that the searched dwelling was indeed Defendant's residence. To start, while there are admittedly some similarities here to *Thabit*, the cases are distinguishable in important ways. Both cases are unclear about how the CI tip was received or the factual basis for the CI's knowledge, and both involve officers observing the defendant leaving the alleged residence prior to arrest. However, as *Gabrio*, there are far more "indicia of reliability" in this case than in *Thabit*.

Here, the affidavit states that the CI had worked on "numerous cases" and "always has been proven to be accurate and reliable," (Doc. 24-1, p. 2), suggesting a "track record or providing reliable information." *See Gabrio*, 295 F.3d at 883; *see also United States v. Odom*, 2024 WL 216784, at *11 (E.D. Ark. Jan. 19, 2024) (finding that, where a CI was "proven reliable on 'previous occasions'—meaning at least two" and "proved to be very reliable during the events leading up to the search," the facts were more similar to *Gabrio* than *Thabit*). Additionally, the affidavit here reviewed Mr. Strickland's felony record, specifically noting "numerous drug and firearms charges," (Doc. 24-1, p. 2), which "increased the reliability of the tip." *Gabrio*, 295 F.3d at 883.

5

Lastly, unlike in *Thabit*, here the CI's information was independently corroborated. The CI's tip included information about Mr. Strickland's vehicle. When surveilling the residence, the officers "[saw] Defendant go in and out of a vehicle like the one the informant described." Doc. 29, p. 5; *see also* Doc. 24-1, p. 2. The affidavit further identified the vehicle and stated that the officers ran the license plate and it "returned to" Mr. Strickland. (Doc. 24-1, p. 2). "If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Williams*, 10 F.3d at 593; *cf. United States v. Ramos*, 818 F.2d 1392, 1397 n.7 (8th Cir. 1987) (stating that, with regards to probable cause for a warrantless arrest, even "the corroboration of minor, innocent details can suffice to establish probable cause"). The Court is satisfied that the information provided by the CI was reliable and corroborated such that it provided probable cause for the officers to believe the residence was that of Defendant.

Under Arkansas law, a "warrantless search that is based on a waiver required by [§ 16-93-106] shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offense." Ark. Code Ann. § 16-93-106(a)(2). Here, there is no assertion that the search was not conducted in a reasonable manner.

### B.  Probable Cause and the Good-Faith Exception

Because the warrantless search waiver is dispositive in this case, the Court need not decide whether the warrant was supported by probable cause or whether the good-faith exception applies. However, for good measure, the Court finds that if the warrant

were required in this case and if it were found to be deficient, the good-faith exception would apply.

A court may determine whether the good-faith exception applies prior to deciding whether the warrant was supported by probable cause; if the exception applies, "then there is no need to visit the underlying question of probable cause." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotations omitted). The good-faith exception holds that the exclusionary rule does not apply, even if a court finds the warrant to be invalid, if the "officer acting *with objective good faith* has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Hopkins*, 824 F.3d 726, 733 (8th Cir. 2016) (emphasis added) (quoting *United States v. Leon*, 468 U.S. 897, 920 (1984)).  The Court's "inquiry is confined to 'the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" *Id.* (quoting *Leon*, 468 U.S. at 922 n.23). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination," *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008) (quoting *Leon*, 468 U.S. at 921), unless one of the following four situations is present:

> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*Hopkins*, 824 F.3d at 733 (quoting *United States v. Cannon*, 703 F.3d 407, 413 (8th Cir. 2013)); *see Leon*, 468 U.S. at 923.

Mr. Strickland argues that the second and third situations are present here. In arguing that the Magistrate Judge "wholly abandoned [her] judicial role in issuing the warrant," he reasons,

> The [J]udge should have recognized that the affidavit did not establish probable cause . . . [because, despite] [t]he informant's reliability [being] sufficiently established, [ ] there were no facts stated in the affidavit from which a reasonable person could conclude that contraband would be found in the apartment. The only corroboration of the informant's tip was the officers observing Defendant come in and out of the apartment and getting in and out of his vehicle.

(Doc. 29, p. 9). This argument is self-defeating. The affidavit stated that the CI "advised" Detective Cookinham that Mr. Strickland "was actively selling methamphetamine and possessing a firearm," while "staying at an apartment in Rogers, Arkansas," for which the CI described the location and appearance. (Doc. 24-1, p. 2). If the CI's credibility was sufficiently established and parts of the information were corroborated—as Mr. Strickland concedes—then it is not unreasonable for one to conclude that such contraband could be found in the apartment. The officers were not required to corroborate that contraband would be found in the apartment for it to be reasonable for the Magistrate Judge to conclude this.

Mr. Strickland next argues that the warrant was so completely lacking in indicia of probable cause that any official's belief that there was probable cause for the warrant would be unreasonable. (Doc. 29, pp. 9–10). For this, he maintains that "[t]he affidavit contains no details from which a reasonable person could conclude the informant's tip was reliable." *Id.* This assertion is not supported by the language of the affidavit. Beyond the corroboration already discussed, the affidavit states that the CI "has been used in numerous cases and the information provided by the reliable, confidential source of

information has always been proven to be accurate and reliable." (Doc. 24-1, p. 2). This Court has already held that the corroboration and the information provided about the CI established probable cause regarding the residence. Even if the Court's holding were incorrect or the holding did not extend to probable cause for finding contraband, the affidavit would just barely fall short and would not be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Hopkins*, 824 F.3d at 733 (quoting *Cannon*, 703 F.3d at 413). Thus, even if the warrant were required and lacked probable cause in this case, the good-faith exception would apply.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress (Doc. 24) is **DENIED**.

**IT IS SO ORDERED** on this 23rd day of April, 2024.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE